IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Annette Patterson, | ) | C/A No.: 1:15-4112-MGL-SVH |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | REPORT AND RECOMMENDATION |
| Carolyn W. Colvin, Acting | ) | |
| Commissioner of Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This appeal from a denial of social security benefits is before the court for a Report and Recommendation ("Report") pursuant to Local Civ. Rule 73.02(B)(2)(a) (D.S.C.). Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) and § 1383(c)(3) to obtain judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). The two issues before the court are whether the Commissioner's findings of fact are supported by substantial evidence and whether she applied the proper legal standards. For the reasons that follow, the undersigned recommends that the Commissioner's decision be affirmed.

I.     Relevant Background

A.     Procedural History

On October 26, 2011, Plaintiff protectively filed applications for DIB and SSI, in which she alleged her disability began on June 1, 2011.[1] Tr. at 221–27. Her applications were denied initially and upon reconsideration. Tr. at 156–59 and 162–63. On September 19, 2013, Plaintiff had a hearing before Administrative Law Judge ("ALJ") Carla McMichael. Tr. at 34–64 (Hr'g Tr.). The ALJ issued an unfavorable decision on December 13, 2013, finding that Plaintiff was not disabled within the meaning of the Act. Tr. at 18–33. Subsequently, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner for purposes of judicial review. Tr. at 1–3. Thereafter, Plaintiff brought this action seeking judicial review of the Commissioner's decision in a complaint filed on October 5, 2015. [ECF No. 1].

B.     Plaintiff's Background and Medical History

1.     Background

Plaintiff was 50 years old at the time of the hearing. Tr. at 41. She completed high school. Tr. at 42. Her past relevant work ("PRW") was as a cashier, a cook, and a stocker. Tr. at 59. She alleges she has been unable to work since February 28, 2013. Tr. at 39.

---

[1] During the administrative hearing, Plaintiff's attorney moved to amend the alleged onset date to February 28, 2013, to coincide with Plaintiff's fiftieth birthday. Tr. at 39.

2.    Medical History

Plaintiff presented to Catherine Toomer, M.D. ("Dr. Toomer"), on October 26, 2011, with a complaint of right knee pain and instability. Tr. at 266. She indicated her right knee had starting "giving out on her" two weeks earlier and had been swelling for two days. *Id.* Plaintiff indicated she had taken no medication for the pain. *Id.* Dr. Toomer assessed knee joint pain and hydrarthrosis of the knee/patella/tibia/fibula. Tr. at 267. She prescribed 800 milligrams of ibuprofen and instructed Plaintiff to take it three times daily. *Id.*

Plaintiff followed up with Dr. Toomer for right knee pain on February 21, 2012. Tr. at 274. Plaintiff indicated she had experienced right knee pain off-and-on over the past eight months, but the record reflects no specific complaints of limitations or worsening. *Id.* Dr. Toomer discontinued Plaintiff's prescription for ibuprofen and prescribed 50 milligrams of Tramadol to be taken every 12 hours as needed and 15 milligrams of Meloxicam to be taken once daily. *Id.* She indicated on a form for the South Carolina Department of Employment and Workforce that Plaintiff was "NOT ABLE TO WORK FULL-TIME" in the occupation of cashier since October 26, 2011. Tr. at 278.

Plaintiff presented to Carol E. Benoit, D.O. ("Dr. Benoit"), for a consultative examination on April 25, 2012. Tr. at 283–85. She complained of knee pain that she indicated was worse in the morning and when going up and down stairs. Tr. at 283. She endorsed pressure in her right knee that occurred after sitting for a while, but indicated it was reduced by elevating the knee. *Id.* She indicated her right knee sometimes caused her

to stumble. *Id.* Dr. Benoit observed Plaintiff to have soft tissue swelling over the right patella and immediately below and lateral to it. Tr. at 285. She also noted a tender fluid collection that was lateral and distant to Plaintiff's right patella. *Id.* Plaintiff was able to extend both knees to 180 degrees. *Id.* She could flex her knee to bring her heel nearly to her buttocks while standing on one leg, but complained of pain in her right knee while performing the task. *Id.* She had normal reflexes, but demonstrated impaired balance; limped on her right leg with toe-walking; and was unable to tandem walk because of complaints of right knee pain. *Id.* An x-ray of Plaintiff's right knee was negative. Tr. at 280. Dr. Benoit assessed right knee osteoarthritis with fluid collections in the soft tissues and greater warmth over the right knee. *Id.* She indicated Plaintiff's complaints were believable. *Id.*

On May 1, 2012, state agency medical consultant Rebecca Meriwether, M.D. ("Dr. Meriwether"), reviewed the evidence and completed a physical residual functional capacity ("RFC") assessment. Tr. at 133–35. Dr. Meriwether indicated Plaintiff was limited as follows: occasionally lift and/or carry 20 pounds; frequently lift and/or carry10 pounds; stand and/or walk for a total of two hours during an eight-hour workday; sit for a total of about two hours during an eight-hour workday; occasionally operate foot pedals with the right lower extremity; occasionally climb ramps/stairs, balance, stoop, and kneel; never climb ladders/ropes/scaffolds, crouch, or crawl; avoid concentrated exposure to hazards; and limit exposure to unprotected heights and uneven terrain. *Id.* On July 11, 2012, state agency medical consultant Darla Mullaney, M.D. ("Dr. Mullaney), reviewed the evidence and assessed the same limitations as Dr. Meriwether. Tr. at 146–48.

4

Plaintiff followed up with Dr. Toomer on June 12, 2012. Tr. at 289. She reported no specific complaints or limitations, aside from itching in her bilateral ears. *Id.* Dr. Toomer refilled Plaintiff's medications and instructed her to follow up in six months. *Id.*

Plaintiff presented to Gary Fischbach, M.D. ("Dr. Fischbach"), on October 8, 2012, to follow up on right knee pain. Tr. at 295. She endorsed swelling, joint stiffness, and occasional left knee discomfort, but reported no specific functional limitations. Tr. at 295–96. Dr. Fischbach renewed Plaintiff's prescriptions. Tr. at 296.

Plaintiff presented to Dr. Fischbach on January 8, 2013, to follow up on swelling and pain in her right knee. Tr. at 294. She indicated her pain medication was not working and requested new medication. *Id.* Dr. Fischbach increased Plaintiff's dosage of Tramadol to two tablets to be taken every six hours, as needed. Tr. at 295.

C.    The Administrative Proceedings

1.    The Administrative Hearing

a.    Plaintiff's Testimony

At the hearing on September 19, 2013, Plaintiff testified she lived alone. Tr. at 41. She indicated she was 5'5" tall and weighed 192 pounds. Tr. at 42. She stated she was working as a part-time cook at Laurel Bay Nursing Home. Tr. at 43–44. She indicated she worked for six hours per day on two to three days per week and had started the job approximately five months earlier. Tr. at 44. She stated she had collected unemployment compensation for two years before she began her current job. Tr. at 44, 45–46.

Plaintiff testified that she experienced constant pain in her bilateral knees, but that the right knee was worse than the left. Tr. at 47–48. She stated she elevated her knee for most of the day. Tr. at 48. She endorsed difficulty climbing stairs. *Id.*

Plaintiff testified she took at least three breaks during her work shift. Tr. at 49. She indicated she elevated her leg in the restroom for approximately 10 minutes at a time during those breaks. Tr. at 49–50. She indicated she would be unable to perform her job for an eight-hour workday. Tr. at 50.

Plaintiff testified she could stand for 30 to 40 minutes at a time. Tr. at 50. She stated she could sit for less than an hour. Tr. at 51. She indicated she elevated her knee above her waist level when she was at home. *Id.* She stated she could walk for five to 10 minutes at a time. Tr. at 52. She indicated she could lift up to 10 pounds. Tr. at 55. She stated she had difficulty bending to pick up items from the floor. Tr. at 55–56. She indicated that bending and squatting caused her to experience pain in the back of her knees. Tr. at 58.

Plaintiff testified she cooked once a week and prepared sandwiches for the remainder of the week. Tr. at 53. She indicated she vacuumed once a week. *Id.* She stated she did her laundry. Tr. at 54. She indicated her daughter typically shopped for her groceries because she had difficulty walking through the store. *Id.* She stated she drove to work and to pay her bills. *Id.*

Plaintiff denied having had surgery, receiving injections to her knee, or attending physical therapy. Tr. at 56, 57–58. She testified she sometimes used a cane, but indicated it was not prescribed by a doctor. Tr. at 57. Plaintiff stated Dr. Fishburn prescribed 800

milligrams of ibuprofen for her pain and another medication for her elevated cholesterol. Tr. at 56–57. She indicated she took the ibuprofen every other day and also applied a topical salve to her knees. Tr. at 57.

b.    Vocational Expert Testimony

Vocational Expert ("VE") Otis Pearson reviewed the record and testified at the hearing. Tr. at 58. The VE categorized Plaintiff's PRW as a cashier, *Dictionary of Occupational Titles* ("*DOT*") number 211.462-014, as light with a specific vocational preparation ("SVP") of three; a cook, *DOT* number 315.361-010, as medium with an SVP of six; and a stocker, *DOT* number 299.367-010, as heavy with an SVP of four. Tr. at 59. The ALJ described a hypothetical individual of Plaintiff's vocational profile who could perform light work with the following limitations: occasionally operate foot pedals with the right upper extremity; occasionally climb ramps and stairs, balance, stoop, and kneel; never crouch, crawl, or climb ladders, ropes, or scaffolds; and must avoid hazards that include machinery and heights. Tr. at 59–60. The VE testified that the hypothetical individual could perform Plaintiff's PRW as a cashier. Tr. at 60. The ALJ asked whether there were any other jobs in the regional or national economy that the hypothetical person could perform. *Id.* The VE identified light jobs with an SVP of two as a laundry folder, *DOT* number 369.687-018, with 8,900 positions in South Carolina and 394,000 positions in the national economy; a garment sorter, *DOT* number 222.687-014, with 2,700 positions in South Carolina and 229,000 positions in the national economy; and a mail clerk, *DOT* number 209.687-026, with 1,400 positions in South Carolina and 119,000 positions in the national economy. *Id.*

7

The ALJ next asked the VE to assume the hypothetical individual would be limited as indicated in the first hypothetical question, but should be allowed to alternate between sitting and standing at will. *Id.* She asked if the hypothetical individual could perform Plaintiff's PRW. *Id.* The VE indicated the individual could not perform Plaintiff's PRW with a sit-stand option. Tr. at 61. The ALJ then asked if the hypothetical individual could perform the jobs of laundry folder, garment sorter, and mail clerk. *Id.* The VE indicated the hypothetical individual could perform the jobs of mail clerk and garment sorter with a sit-stand option and could also perform light work with an SVP of two as an office helper, *DOT* number 239.567-010, with 1,050 positions in South Carolina and 85,000 positions in the national economy. Tr. at 62.

The ALJ next asked the VE to assume the hypothetical individual would be limited to sedentary work and would have to elevate her left knee at waist-height for ten minutes per hour throughout an eight-hour workday. Tr. at 62. She asked if competitive employment would be excluded. Tr. at 62–63. The VE indicated the limitations would eliminate all jobs. Tr. at 63.

2.    The ALJ's Findings

In her decision dated December 13, 2013, the ALJ made the following findings of fact and conclusions of law:

1.    The claimant meets the insured status requirements of the Social Security Act through September 30, 2015.
2.    The claimant has not engaged in substantial gainful activity since February 28, 2013, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).
3.    The claimant has the following severe impairments: osteoarthritis and obesity (20 CFR 404.1520(c) and 416.920(c)).

4.   The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5.   After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that the claimant can only occasionally operate foot pedals with her right lower extremity. Further, although she can perform no climbing of ladders, ropes, or scaffolds, and no crouching or crawling; she can occasionally climb or [sic] ramps or stairs, balance, or kneel. Additionally, the claimant must avoid work place hazards such as dangerous machinery and unprotected heights.

6.   The claimant is capable of performing past relevant work as a cashier, DOT# 211.462-014, semi-skilled mental demands, light exertional level. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965).

7.   The claimant has not been under a disability, as defined in the Social Security Act, from February 28, 2013, through the date of this decision (20 CFR 404.1520(f) and 416.920(f)).

Tr. at 23–29.

II.   Discussion

Plaintiff alleges the Commissioner erred for the following reasons:

1)   the ALJ improperly evaluated the medical opinions of record; and

2)   the ALJ's credibility finding was not supported by substantial evidence.

The Commissioner counters that substantial evidence supports the ALJ's findings and that the ALJ committed no legal error in her decision.

A.    Legal Framework

1.    The Commissioner's Determination-of-Disability Process

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability." 42 U.S.C. § 423(a). Section 423(d)(1)(A) defines disability as:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for at least 12 consecutive months.

42 U.S.C. § 423(d)(1)(A).

To facilitate a uniform and efficient processing of disability claims, regulations promulgated under the Act have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g., Heckler v. Campbell*, 461 U.S. 458, 460 (1983) (discussing considerations and noting "need for efficiency" in considering disability claims). An examiner must consider the following:  (1) whether the claimant is engaged in substantial gainful activity; (2) whether she has a severe impairment; (3) whether that impairment meets or equals an impairment included in the Listings;[2] (4) whether such

---

[2]  The Commissioner's regulations include an extensive list of impairments ("the Listings" or "Listed impairments") the Agency considers disabling without the need to assess whether there are any jobs a claimant could do. The Agency considers the Listed impairments, found at 20 C.F.R. part 404, subpart P, Appendix 1, severe enough to prevent all gainful activity. 20 C.F.R. §§ 404.1525, 416.925. If the medical evidence shows a claimant meets or equals all criteria of any of the Listed impairments for at least one year, she will be found disabled without further assessment. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). To meet or equal one of these Listings, the claimant must establish that her impairments match several specific criteria or are "at least equal in severity and duration to [those] criteria." 20 C.F.R. §§ 404.1526, 416.926; *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); *see Bowen v. Yuckert*, 482 U.S. 137, 146

impairment prevents claimant from performing PRW;[3] and (5) whether the impairment prevents her from doing substantial gainful employment. *See* 20 C.F.R. §§ 404.1520, 416.920. These considerations are sometimes referred to as the "five steps" of the Commissioner's disability analysis. If a decision regarding disability may be made at any step, no further inquiry is necessary. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4) (providing that if Commissioner can find claimant disabled or not disabled at a step, Commissioner makes determination and does not go on to the next step).

A claimant is not disabled within the meaning of the Act if she can return to PRW as it is customarily performed in the economy or as the claimant actually performed the work. *See* 20 C.F.R. Subpart P, §§ 404.1520(a), (b), 416.920(a), (b); Social Security Ruling ("SSR") 82-62 (1982). The claimant bears the burden of establishing her inability to work within the meaning of the Act. 42 U.S.C. § 423(d)(5).

Once an individual has made a prima facie showing of disability by establishing the inability to return to PRW, the burden shifts to the Commissioner to come forward with evidence that claimant can perform alternative work and that such work exists in the regional economy. To satisfy that burden, the Commissioner may obtain testimony from a VE demonstrating the existence of jobs available in the national economy that claimant can perform despite the existence of impairments that prevent the return to PRW. *Walls v.*

---

(1987) (noting the burden is on claimant to establish his impairment is disabling at Step 3).

[3] In the event the examiner does not find a claimant disabled at the third step and does not have sufficient information about the claimant's past relevant work to make a finding at the fourth step, he may proceed to the fifth step of the sequential evaluation process pursuant to 20 C.F.R. §§ 404.1520(h), 416.920(h).

*Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002). If the Commissioner satisfies that burden, the claimant must then establish that she is unable to perform other work. *Hall v. Harris*, 658 F.2d 260, 264–65 (4th Cir. 1981); *see generally Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987) (regarding burdens of proof).

2.      The Court's Standard of Review

The Act permits a claimant to obtain judicial review of "any final decision of the Commissioner [] made after a hearing to which he was a party." 42 U.S.C. § 405(g). The scope of that federal court review is narrowly-tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the Commissioner applied the proper legal standard in evaluating the claimant's case. *See Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Walls*, 296 F.3d at 290 (*citing Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)).

The court's function is not to "try these cases de novo or resolve mere conflicts in the evidence." *Vitek v. Finch*, 438 F.2d 1157, 1157–58 (4th Cir. 1971); *see Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (*citing Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). Rather, the court must uphold the Commissioner's decision if it is supported by substantial evidence. "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 390, 401; *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005). Thus, the court must carefully scrutinize the entire record to assure there is a sound foundation for the Commissioner's findings and that her conclusion is rational. *See Vitek*, 438 F.2d at 1157–58; *see also Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is

substantial evidence to support the decision of the Commissioner, that decision must be affirmed "even should the court disagree with such decision." *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

B.    Analysis

1.    Medical Opinions

Plaintiff argues the ALJ failed to properly evaluate the medical opinions of record. [ECF No. 13 at 5–10]. The Commissioner maintains that substantial evidence supports the ALJ's evaluation of the medical opinion evidence. [ECF No. 15 at 8–16]. In her reply brief, Plaintiff argues the ALJ's findings were contrary to all the medical opinions of record. [ECF No. 16 at 1–3].

ALJs must consider all medical opinions of record. 20 C.F.R. §§ 404.1527(b), 416.927(b). Medical opinions are "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity" of the claimant's impairments, including her symptoms, diagnosis and prognosis, what she can still do despite her impairments, and her physical or mental restrictions. SSR 96-5p (1996), quoting 20 C.F.R. § 404.1527(a). The regulations require that ALJs accord controlling weight to treating physicians' medical opinions that are well-supported by medically-acceptable clinical and laboratory diagnostic techniques and that are not inconsistent with the other substantial evidence of record. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); SSR 96-2p. However, an opinion that an individual is "disabled" or is "unable to work" is considered an opinion on an issue reserved to the Commissioner, as

opposed to a medical opinion, and is not entitled to any special significance even if it is offered by a treating physician. 20 C.F.R. §§ 404.1527(d), 416.927(d).

If the record contains no opinion from a treating physician or if the ALJ determines that the treating physician's opinion is not entitled to controlling weight, she is required to evaluate all the opinions of record based on the factors in 20 C.F.R. §§ 404.1527(c) and 416.927(c). *Id.* Those factors include (1) the examining relationship between the claimant and the medical provider; (2) the treatment relationship between the claimant and the medical provider, including the length of the treatment relationship and frequency of treatment and the nature and extent of the treatment relationship; (3) the supportability of the medical provider's opinion in his treatment records; (4) the consistency of the medical opinion with other evidence in the record; and (5) the specialization of the medical provider offering the opinion. *Johnson*, 434 F.3d at 654; 20 C.F.R. §§ 404.1527(c), 416.927(c).

A treating source's opinion generally carries more weight than any other opinion evidence of record, even if it not entitled to controlling weight. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). However, "the ALJ holds the discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence." *Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001), citing *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992). Medical opinions that are adequately explained by the medical source and supported by medical signs and laboratory findings should be accorded greater weight than uncorroborated opinions. 20 C.F.R. §§ 404.1527(c)(3), 416.927(c)(3). "[T]he more consistent an opinion is with the record as a whole, the more

weight the Commissioner will give it." *Stanley v. Barnhart*, 116 F. App'x 427, 429 (4th Cir. 2004), citing 20 C.F.R. § 416.927(d) (2004)[4]; *see also* 20 C.F.R. § 404.1527(c)(4).

ALJs are not required to expressly discuss each factor in 20 C.F.R. §§ 404.1527(c) and 416.927(c), but their decisions should demonstrate that they considered and applied all the factors and accorded each opinion appropriate weight in light of the evidence of record. *See Hendrix v. Astrue*, No. 1:09-1283-HFF, 2010 WL 3448624, at *3 (D.S.C. Sept. 1, 2010). It is not the role of this court to disturb the ALJ's determination as to the weight to be assigned to a medical source opinion "absent some indication that the ALJ has dredged up 'specious inconsistencies,' *Scivally v. Sullivan*, 966 F.2d 1070, 1077 (7th Cir. 1992), or has not given good reason for the weight afforded a particular opinion." *Craft v. Apfel*, 164 F.3d 624, 1998 WL 702296, at *2 (4th Cir. 1998) (unpublished table decision) (per curiam).

a.     Dr. Toomer's Statement

Plaintiff argues the ALJ erred in dismissing Dr. Toomer's opinion. [ECF No. 13 at 5–8]. The Commissioner maintains the ALJ accorded little weight to Dr. Toomer's opinion because it was unsupported by Dr. Toomer's treatment notes and was inconsistent with the other evidence of record. [ECF No. 15 at 9–15]. She contends the ALJ was not required to expressly discuss all the factors in 20 C.F.R. §§ 404.1527(c) and 416.927(c) in evaluating Dr. Toomer's opinion. *Id.* at 10–11. She further argues Dr.

---

[4] The version of 20 C.F.R. § 416.927 effective March 26, 2012, redesignated 20 C.F.R. § 416.927(d)(4) as 20 C.F.R. § 416.927(c)(4).

Toomer's opinion was entitled to no particular significance because it was an opinion on an issue reserved to the Commissioner. *Id.* at 11.

The ALJ accorded little weight to Dr. Toomer's opinion. Tr. at 26. She recognized that Dr. Toomer was a treating physician, but noted that Dr. Toomer did not specify any functional limitations or give any reasons or findings as to why she opined that Plaintiff was unable to work. *Id.* She observed that Dr. Toomer's statement was one on an issue reserved to the Commissioner. *Id.*

The ALJ correctly observed that Dr. Toomer's statement was not a medical opinion under the regulations because it was a statement that Plaintiff was unable to work. *See* SSR 96-5p (providing that statements as to whether an individual's RFC prevents her from performing her PRW and opinions that an individual is disabled are administrative findings that are dispositive of a case, as opposed to medical opinions). The ALJ noted that Dr. Toomer's statement did not reflect her judgment as to Plaintiff's restrictions or discuss any findings that supported her decision. *See id.* Because Dr. Toomer provided an opinion on an issue reserved to the Commissioner, as opposed to a medical opinion, her statement deserved no particular weight under the regulations. *See* 20 C.F.R. §§ 404.1527(a), (d), 416.927(a), (d). Nevertheless, the ALJ's decision reflects consideration of the factors in 20 C.F.R. §§ 404.1527(c) and 416.927(c) in that the ALJ observed that Dr. Toomer was a treating physician (Tr. at 26) and discussed Plaintiff's treatment relationship with Dr. Toomer (Tr. at 25–26), but clarified that she gave little weight to the opinion because it lacked explanation (Tr. at 26). *See* 20 C.F.R. §§ 404.1527(c)(1), (2), (3), 416.927(c)(1), (2), (3). The ALJ was not required to discuss Dr.

16

Toomer's specialization because the record does not indicate she was a medical specialist. *See* 20 C.F.R. §§ 404.1527(c)(5), 416.927(c)(5). While the ALJ did not specifically address the consistency factor in her discussion of Dr. Toomer's opinion, she generally explained why she found that a determination that Plaintiff was unable to perform her PRW as a cashier was inconsistent with the evidence of record. *See* Tr. at 27. In light of the foregoing, the undersigned recommends the court find the ALJ's decision to accord little weight to Dr. Toomer's opinion was supported by substantial evidence.

b.    Dr. Benoit's Opinion

Plaintiff maintains the ALJ did not adequately support her decision to give substantial weight to Dr. Benoit's opinion. [ECF No. 13 at 8]. She contends the ALJ failed to explain how Dr. Benoit's opinion was consistent with the other opinions of record. *Id.*

The Commissioner argues Dr. Benoit's findings were supported by her examination and the objective test findings. [ECF No. 15 at 15]. She maintains the regulations do not require that a physician's report be consistent with other medical opinions of record for the ALJ to give it substantial weight. *Id.*

The ALJ noted that Dr. Benoit's opinion was not entitled to controlling weight because she was not a treating medical source. Tr. at 26. However, the ALJ indicated she gave substantial weight to Dr. Benoit's findings because they were well-supported by objective diagnostic testing, her observations, her impartial analysis of the evidence of record, and her well-reasoned conclusion. *Id.*

17

The undersigned recommends the court find the ALJ applied the factors in 20 C.F.R. §§ 404.1527(c) and 416.927(c) and explained her reasons for giving substantial weight to Dr. Benoit's opinion. The ALJ considered the examining relationship between Plaintiff and Dr. Benoit, but noted that the absence of a treatment relationship prevented her from according controlling weight to Dr. Benoit's opinion. *See* Tr. at 26; *see also* 20 C.F.R. §§ 404.1527(c)(1), (2), 416.927(c)(1), (2). She found that the diagnoses Dr. Benoit assessed were supported by her findings upon examination and discussed the evidence Dr. Benoit relied on in forming her opinion. *See id.*; *see also* 20 C.F.R. §§ 404.1527(c)(3), 416.927(c)(3). She also addressed the consistency of Dr. Benoit's findings with the other evidence of record that included her analysis of the medical evidence in the case file and Plaintiff's statements, right knee x-ray, and activities of daily living ("ADLs"). *See id.*; *see also* 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4).

As the ALJ noted, Dr. Benoit did not offer an opinion on Plaintiff's ability to work or assess any functional limitations, but merely reported her observations and objective findings and assessed diagnoses. *See id.*; *see also* Tr. at 283–85. Therefore, the ALJ was not specifically required to discuss whether Dr. Benoit's medical opinion was consistent with the opinion from Dr. Toomer that Plaintiff was disabled from her PRW as a cashier and the RFC assessments of Drs. Meriwether and Mullaney.

c.    Dr. Mullaney's Opinion

Plaintiff argues the ALJ failed to acknowledge that Dr. Mullaney's opinion was not consistent with a finding that she could perform light work, but was instead consistent with a finding that she could perform sedentary work. [ECF No. 13 at 8–10]. The

18

Commissioner maintains the ALJ did not err in applying Dr. Mullaney's opinion because she declined to give it probative weight. [ECF No. 15 at 16].

The ALJ indicated she considered Dr. Mullaney's opinion that Plaintiff could perform work at the light RFC that involved sitting for six hours in an eight-hour day; limited pushing and pulling with the right lower extremity; no crouching, crawling, or climbing ladders, ropes, or scaffolds; occasional climbing of ramps or stairs, balancing, stooping, or kneeling; and avoidance of walking on uneven terrain and workplace hazards, such as dangerous machinery and unprotected heights. Tr. at 26–27. She stated the RFC found in her decision was generally consistent with Dr. Mullaney's opinion, but that the evidence supported that Plaintiff could work. Tr. at 27.

The RFC assessed by the ALJ was very similar to that assessed by Dr. Mullaney, except the ALJ found Plaintiff was capable of standing and walking for up to six hours during an eight-hour workday, and Dr. Mullaney found that Plaintiff could only stand and walk for a total of two hours during an eight-hour workday. *Compare* Tr. at 24, *with* Tr. at 146–48. Although the ALJ found that most of the restrictions indicated by Dr. Mullaney were consistent with the record,[5] she determined the standing and walking restrictions were not supported by Plaintiff's statements. Tr. at 27. Among those statements the ALJ found to be inconsistent with Dr. Mullaney's assessment was Plaintiff's testimony that she had been working part-time over the course of five months

---

[5] The ALJ considered only the consistency factor in assessing Dr. Mullaney's opinion. *See* Tr. at 26–27. However, she did not err because the examining relationship, treatment relationship, and supportability factors are inapplicable to opinions assessed by state agency consultants.

in a job that required she stand for five to six hours during her six-hour work shifts. Tr. at 25 and 27; *see also* Tr. at 43–44, and 49–50. Although Plaintiff argues the ALJ erred in assessing an RFC that differed from the medical opinions of record—particularly with regard to her standing ability—the undersigned notes that the ALJ relied on evidence that was not available to Drs. Toomer, Benoit, Meriwether, or Mullaney regarding Plaintiff's recent work activity. Thus, Plaintiff's demonstrated ability to stand in her part-time job exceeded the estimated time Drs. Mullaney and Meriwether indicated she could stand over the course of an eight-hour day and was consistent with the standing and walking required in the job of a cashier that Dr. Toomer indicated she was unable to perform. In light of this evidence, the ALJ reasonably concluded Plaintiff was capable of standing and walking for six hours in an eight-hour workday, and her reasoning with respect to Dr. Mullaney's opinion was supported by substantial evidence.

2.      Credibility[6]

Plaintiff argues the ALJ's assessment of her credibility was not supported by substantial evidence. [ECF No. 13 at 10]. She maintains the ALJ erred in discounting her credibility based on the facts that she had not obtained knee surgery, undergone steroid injections, or participated in physical therapy. *Id.* at 11–12.

---

[6] The undersigned notes that the Social Security Administration recently published SSR 16-3p, 2016 WL 1119029 (2016), which supersedes SSR 96-7p, eliminates use of the term "credibility," and clarifies that subjective symptom evaluation is not an examination of an individual's character. Because the ALJ decided this case prior to March 16, 2016, the effective date of SSR 16-3p, the undersigned analyzes the ALJ's decision based on the provisions of SSR 96-7p, which required assessment of the claimant's credibility.

The Commissioner argues the ALJ was not merely required to accept Plaintiff's statements regarding the intensity, persistence, and limiting effects of her symptoms. [ECF No. 15 at 17]. She maintains the ALJ considered discrepancies between Plaintiff's assertions and Plaintiff's reports to the treating and examining physicians and others. *Id.* at 17–18. She contends the ALJ appropriately considered Plaintiff's ADLs and treatment history. *Id.* at 18.

In considering symptoms such as pain, fatigue, shortness of breath, weakness, or nervousness, the ALJ should first "consider whether there is an underlying medically determinable physical or mental impairment(s)—i.e., an impairment(s) that can be shown by medically acceptable clinical and laboratory diagnostic techniques—that could reasonably be expected to produce the individual's pain or other symptoms." SSR 96-7p. After determining that the individual has a medically-determinable impairment that could reasonably be expected to produce the alleged symptoms, the ALJ should evaluate the intensity, persistence, and limiting effects of her symptoms to determine the limitations they impose on her ability to do basic work activities. *Id.* If the individual's statements about the intensity, persistence, or limiting effects of her symptoms are not substantiated by the objective medical evidence, the ALJ must consider the individual's credibility in light of the entire case record. *Id.* The ALJ must consider "the medical signs and laboratory findings, the individual's own statements about the symptoms, any statements and other information provided by treating or examining physicians or psychologists and other persons about the symptoms and how they affect the individual, and any other relevant evidence in the case record." *Id.* In addition to the objective medical evidence,

ALJs should also consider the following when assessing the credibility of an individual's

statements:

1.    The individual's ADLs;

2.    The location, duration, frequency, and intensity of the individual's
      pain or other symptoms;

3.    Factors that precipitate and aggravate the symptoms;

4.    The type, dosage, effectiveness, and side effects of any medication
      the individual takes or has taken to alleviate pain or other symptoms;

5.    Treatment, other than medication, the individual receives or has
      received for relief of pain or other symptoms;

6.    Any measure other than treatment the individual uses or has used to
      relieve pain or other symptoms (e.g., lying flat on his or her back,
      standing for 15 to 20 minutes every hour, or sleeping on a board);
      and

7.    Any other factors concerning the individual's functional limitations
      and restrictions due to pain or other symptoms.

*Id.*

The ALJ must specify her reasons for the finding on credibility, and her reasons

must be supported by the evidence in the case record. *Id.* Her decision must clearly

indicate the weight she accorded to the claimant's statements and the reasons for that

weight. *Id.* In *Mascio v. Colvin*, 780 F.3d 632, 639 (4th Cir. 2015), the court agreed with

the Seventh Circuit that the ALJ "'gets things backwards' by implying 'that ability to

work is determined first and is then used to determine the claimant's credibility.'" The

court emphasized the need to compare the claimant's alleged functional limitations from

pain to the other evidence in the record and indicated an ALJ should explain how she

22

decided which of a claimant's statements to believe and which to discredit. *Id.* at 639–40. The court subsequently stressed that an ALJ's decision must "build an accurate and logical bridge from the evidence" to the conclusion regarding the claimant's credibility. *Monroe v. Colvin*, --- F.3d ---, 2016 WL 3349355, at *10 (4th Cir. 2016), citing *Clifford v. Apfel*, 227 F.3d 872 (7th Cir. 2000).

The ALJ explained that Plaintiff's "statements concerning her impairments and their impact on her ability to work" were "not entirely credible in light of discrepancies between" her "assertions and information contained in the documentary reports and the reports of the treating and examining practitioners." Tr. at 27. She observed that Plaintiff's treatment records reflected few complaints and that her medication seemed to adequately control her pain between October 2011 and January 2013. Tr. at 25–26. She indicated Plaintiff's assertion that she was unable to work was inconsistent with the fact that she had engaged in part-time work for at least five months prior to the hearing. Tr. at 27. She acknowledged that Plaintiff lived alone and was able to care for her personal needs without assistance, cook, do housework, drive, and shop. *Id.* She noted that Plaintiff testified that she had not undergone knee surgery, received steroid injections, or participated in physical therapy. *Id.*

Plaintiff alleges no specific, relevant evidence that the ALJ ignored in assessing her credibility, but rather argues the ALJ relied only on the absence of certain types of treatment. However, the undersigned's review shows the ALJ found that Plaintiff's osteoarthritis and obesity could reasonably be expected to produce the pain she alleged, but that her pain was not as severe as she alleged for multiple reasons. Tr. at 25–26 and

23

27. The ALJ observed that Plaintiff infrequently complained of symptoms to her physicians and voiced no complaints about her medications for approximately 15 months. *See* Tr. at 25–26. She considered Plaintiff's ADLs, including her work activity, ability to care for her personal needs, cook, do housework, drive, and shop. *See* Tr. at 27. She also reflected on the type of treatment Plaintiff had received and found that the absence of physicians' recommendations for physical therapy, steroid injections, or surgery suggested Plaintiff's impairments were not as incapacitating as Plaintiff alleged. All of these are relevant considerations under SSR 96-p. Therefore, the undersigned recommends the court find the ALJ's decision reflects adequate reasons for her assessment of Plaintiff's credibility that are supported by substantial evidence.

III.    Conclusion and Recommendation

The court's function is not to substitute its own judgment for that of the Commissioner, but to determine whether her decision is supported as a matter of fact and law. Based on the foregoing, the undersigned recommends the Commissioner's decision be affirmed.

IT IS SO RECOMMENDED.

*Shiva V. Hodges*

August 23, 2016                                         Shiva V. Hodges
Columbia, South Carolina                      United States Magistrate Judge

**The parties are directed to note the important information in the attached
"Notice of Right to File Objections to Report and Recommendation."**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).